**Patricia JOHNSTON, formerly Patricia Gene Griffith, Appellant,**

v.

**Gary Jo GRIFFITH, Appellee.**

No. 59241.

Court of Appeals of Oklahoma, Division No. 4.

Oct. 11, 1983.

Rehearing Denied Oct. 28, 1983.

Certiorari Denied Jan. 17, 1984.

Released for Publication by Order of Court of Appeals Jan. 27, 1984.

William H. Mattoon, Norman, for appellant.

L. Garland Bloodworth, Bloodworth & Hoover, Oklahoma City, for appellee.

DeMIER, Judge.

This is a case in which the divorce decree calls a sum certain owed to a bank, to be extinguished in equal payments, support alimony. However, the decree states the support alimony cannot be discharged in bankruptcy or on death or remarriage of the plaintiff wife. The trial court found, after plaintiff had been remarried 27 months, that the payments were for support alimony and should have terminated on remarriage. The court further found, however, that the 27 payments should, nevertheless, be applied toward a child support arrearage.

We reverse and remand to the trial court.

## FACTS

On September 7, 1979, a divorce was granted to the parties. Defendant/appellee executed a waiver and approved the divorce decree after a conference with the appellant wife and her lawyer. The husband chose not to seek legal advice.

The wife was awarded custody of the two children and the husband was ordered to pay $400 per month child support.

The problem arose in the drafting of the journal entry. It stated as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Defendant is to assume and pay *certain jointly acquired debts and obligations of the parties hereto outstanding at the time of this decree,* to-wit:

1. The previously described second mortgage on the above described real property in West Timberlake Addition, by FIDELITY BANK in the amount of $6,273.60;

2. The previously described automobile (Chevette) loan held by FIDELITY BANK in the amount of $3,286.17, in the total sum of $9,559.77 with the total monthly payment of $242.41; that the Plaintiff is hereby awarded support alimony in the sum of $9,559.77; that the

Defendant is ordered to pay as *support alimony* the sum of $9,559.77; *said alimony judgment to be extinguished by the monthly payment* of the foregoing debts in the sum of $242.41, and that *said alimony is not dischargeable in Bankruptcy or upon the death or remarriage of Plaintiff.*" (emphasis added)

The husband was current on these payments at all times. The payments were made directly to the bank, not to the wife. However, the husband had failed to pay child support payments as ordered and was in arrears in the amount of $6,200.

The wife remarried, with the husband's knowledge. He at no time objected to making the payments to the bank as ordered. However, when the wife filed an application for a contempt citation against the husband for failure to pay child support, he filed a motion to terminate the payments to the bank on the theory that these were support alimony payments which should have terminated on remarriage or death of the wife. The trial court agreed and credited the husband's payments made after the remarriage to the child support arrearage and then terminated the payments.

## I

█ The first question we must ask is: does this case fall within the purview of 12 O.S.1981 § 1289(B)? The answer is no, because the amounts which were ordered paid were not in the form of support alimony but rather property division.

Let us examine the order: First, the paragraph in question starts as follows: "It is further ordered, adjudged and decreed by the Court that the Defendant is to assume and pay certain jointly acquired debts and obligations of the parties hereto outstanding at the time of the decree." Second, the order describes two debts to Fidelity Bank secured by notes on property awarded to the wife for a total of $9,559.77 with a monthly payment of $242.41. Third, the order next awards support alimony to the wife in the exact amount of the debts to be paid at the exact monthly payment already

required. Finally, the paragraph concludes by stating, "that said alimony is not dischargeable in Bankruptcy or upon the death or remarriage of Plaintiff [wife]."

The record at the hearing reveals that the husband made every payment to the bank. The wife did not receive one cent of the money for the support and maintenance of the children.

█ It is obvious that an error was made by the drafter of the decree by calling the property settlement "support alimony." The amount set out was already a debt for which both parties were obligated. However, even if we approach the problem assuming the payments were correctly labeled, the statute relied upon does not require the result reached by the court.

The statute in question is 12 O.S.1981 § 1289(B), which provides:

"B. In any divorce decree which provides for periodic alimony payments, the court shall plainly state, at the time of entering the original decree, what dollar amount of all or a portion of each such payment is designated as support, and what dollar amount of all or a portion of such payment is a payment pertaining to a division of property. Upon the death of the recipient, the payments for support, if not already accrued, shall terminate, but the payments pertaining to a division of property shall continue until completed; and the decree shall so specify. The payments pertaining to a division of property shall be irrevocable.... The court shall also provide in the divorce decree that any such payment of support shall terminate after remarriage of the recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable. Provided however, that unless the recipient shall commence an action for such determination within ninety (90) days of the date of such remarriage, the court shall, upon proper application, order the pay-

ment of support terminated and the lien thereof discharged."

There have been numerous cases which have recognized the rights of the parties to enter into such agreements as they may desire concerning the termination of support alimony. Section 1289 has not abrogated the parties' right to contract or reach such agreements. *Perry v. Perry*, Okl., 551 P.2d 256 (1976).

In fact, even when the decree makes no specific provision that payments are to continue after remarriage, the court may refuse to terminate them if it concludes that it was the parties' intent that they continue after remarriage. *Stuart v. Stuart*, Okl., 555 P.2d 611 (1976). In *Stuart* the court found the factor that the husband had continued to pay alimony installments after the wife's remarriage as being persuasive in determining the intent of the parties.

Here, of course, the husband also continued to pay after the wife's remarriage. However, there is a much stronger indicator of the parties' intent. In this case the husband and wife negotiated and the husband signed the decree which provided that the alimony would *not* terminate after remarriage.

We conclude, therefore, that the termination of the payments under the seeming authority of 12 O.S.1981 § 1289(B), was error.

## II

The next question we must address is whether the terms of the divorce decree could be modified by the trial court pursuant to 12 O.S.1981 § 1031 and 1038.

The court modified the decree but gave no reason. Since we have ruled that 12 O.S.1981 § 1289(B), gave no basis for such modification, it could only be for the reason set out in the fourth section of 12 O.S.1981 § 1031. This reads as follows: "The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter . . . . Fourth. For fraud, practiced by the successful par-

ty, in obtaining the judgment or order . . . ." Appellee alleged that the court had power to modify the decree because plaintiff and her lawyer fraudulently failed to notify him of § 1289(B) when he executed the waiver and signed the decree.

However § 1031 must be read in conjunction with 12 O.S.1981 § 1038, which states:

"Proceedings to vacate or modify a judgment or order, for the causes mentioned in subdivisions four, five and seven, of Section [1031] must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant, or a person of unsound mind and then within two (2) years after [removal of such disability] . . . ."

We calculate the time from the divorce decree to the filing of the motion to terminate to be 33 months. This would be nine months over the time allowed. Therefore, the trial court had no jurisdiction to modify the decree, based upon any alleged fraud in obtaining it.

It might be argued by appellee that the time ran from the discovery of the alleged fraud. We cannot take this seriously when appellee in his own brief made this statement:

"It is not Appellee's contention that Appellant's counsel intentionally misrepresented or withheld any such information *nor intentionally perpetrated a fraud upon the Appellee.* It is, however, Appellee's contention that full disclosure of his rights under 12 O.S. § 1289(b) [sic] was not made to him before his signing of the decree, and that this non-disclosure operates as a legal fraud that is a sufficient basis for nullifying that particular section of the decree." (emphasis added)

It is our understanding that a fraud must be intentional. We are not aware of what is meant by the term "legal fraud."

As to the citation for contempt, the record clearly establishes that the husband was in arrears in the amount of $6,200 at the time of trial. Husband admitted his

failure to pay. The failure was apparently based upon the mistake of fact or law that his "support alimony" payments made after plaintiff's remarriage would apply to child support. We are not, therefore, prepared to adjudge defendant guilty of contempt.

### III

We conclude that the mechanical application of § 1289(B), which is urged by appellee, and adopted by the trial court, does not effectuate the intended purpose of the statute and is inconsistent with the intent of the parties herein.

We reverse and vacate the trial court's order terminating support alimony and giving credit to child support payments, and remand the matter to the trial court with directions to enter judgment in favor of plaintiff and against defendant for $6,200 plus interest allowed by law from November 4, 1982. We further vacate the finding that defendant is not in contempt, and remand for further proceedings in keeping with this opinion.

We additionally find that defendant should pay plaintiff's costs on appeal, to include a reasonable attorney fee. We remand the matter to the trial court to hold an evidentiary hearing to establish costs and set a reasonable attorney fee.

STUBBLEFIELD, J., concurs.

BRIGHTMIRE, P.J., dissents.

BRIGHTMIRE, Presiding Judge, dissenting.

I think the trial judge correctly determined that the divorce decree specifically provided for "support alimony." It required the alimony to be paid by liquidating the mortgage indebtedness on the house and car awarded to the woman. Thus as I see it the crucial question is not whether the periodic payments in question are for "support" or for property division, but whether under the circumstances the court had authority to overrule, as it were, the command of 12 O.S.Supp.1976 § 1289(B), that support alimony payments end with death or remarriage of the recipient and require such payments to continue after remarriage absent an agreement of the parties to that effect. In my opinion he did not. See *Stuart v. Stuart*, Okl., 555 P.2d 611 (1976), and *Perry v. Perry*, Okl., 551 P.2d 256 (1976).

Subject statute specifies that when a divorce decree provides for periodic alimony payments designated for "support" such payments shall be terminated upon proof of recipient's death and the decree "shall also provide ... that ... payment of support shall terminate after remarriage of the recipient ..." subject to an action for continuance of the support fileable within 90 days after the remarriage.

Unlike the facts in *Perry* and *Stuart*, there is no evidence here that the parties entered into any pre-decree agreement concerning the determination or settlement of all their marital rights; nor was the decree a "consent decree." Specifically, there was no agreement about support alimony. The woman said her lawyer undertook to represent both parties. The man signed a waiver of service of summons and entry of appearance in the case and the woman, accompanied by the lawyer, obtained a default decree. Apparently the woman's lawyer prepared a decree setting out the judgment that had been rendered on September 7, 1979, and submitted it to the man for his "approval." It was signed by the judge and filed October 17, 1979. The closest the woman came to establishing an agreement was when she made the general statement that she and the man discussed and agreed upon a "property settlement."

The woman, however, never did specify what the parties had agreed to or whether such agreement was ever given effect by the court. The most information gleaned from the woman on direct examination was that she, the man and her lawyer discussed the decree of divorce and the lawyer later prepared one in his office. This was after obtaining a judgment. The man said that the lawyer, however, never explained the alimony provisions to him.

The circumstance of her lawyer attempting to represent the adversaries, if true, casts a grave ethical shadow across the proceedings. Certainly it raises the specter of fraud being presumptively perpetrated on the man.[1]

The man stopped paying child support after the woman remarried but continued making the alimony payment. Later, after consulting a lawyer, he challenged the validity of the decree insofar as it required post remarriage alimony payments.

To sum up, then, there is no settlement agreement in evidence. There is no evidence the court approved any agreement, nor did he adopt the terms of one in his decree. Nor do the facts, as I said, demonstrate that the court entered a "consent decree." *Ettinger v. Ettinger*, Okl., 637 P.2d 63 (1981).

Returning now to the decree itself the majority opinion attributes the problem to a faulty drafting of the decree and singles out the order requiring the man to pay the two mortgages in question—the home mortgage of $6,273.60 and the Chevette mortgage of $3,286.17, totalling $9,559.77 —as the source of the legal grief. Though it may fall short of being paragonal, I see nothing fatally wrong with the drafting. It is quite clear the court intended to award the woman alimony in an amount equal to the two mortgage balances, fixed the periodic payments in an amount equal to the mortgage installments, and ordered the man to make the payments to the mortgage company rather than the woman. As the majority points out, ordering the man to pay the mortgagee must be read as an integral part of the alimony provision and not as an isolated order. There is nothing legally inappropriate about such an order. Of course, the man was placed at the risk of having to continue making payments to the wife for any remaining balance of the $9,559.77 even if the house or car was sold and the mortgage debt prematurely satisfied. *Shotwell v. Shotwell*, Okl., 603 P.2d 1140 (1979). I am satisfied that had the court ordered the payments made directly to the woman this controversy would not have reached us.

Having arrived at the conclusion that the alimony payments were for support and that the trial court could not amend § 1289(B) by means of contrary provisions, the conclusion seems to inevitably be that the man's obligation to make the alimony payments ceased when the woman remarried and failed to file a need action within 90 days after that.

Giving the man credit on the child support for the alimony overpayments was, I think, just and equitable in this case. The record discloses that the woman received a substantial portion of the joint estate, although one cannot tell what percentage because of the lack of property values.

The trial court in my opinion rendered justice, did not abuse his discretion and should be affirmed.

---

**1.** This type of fraud has been classified as legal fraud, as distinguished from positive or intentional fraud, since it is made out by legal construction or inference. Black's Law Dictionary, 789 (4th ed. Rev.1968).